## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ALLEN VICKS (#426156)**                               **CIVIL ACTION NO.**

**VERSUS**                                              **18-556-BAJ-EWD**

**JAMES PACKNETT, ET AL.**

## **NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 6, 2020

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ALLEN VICKS (#426156)**                                    **CIVIL ACTION NO.**

**VERSUS**                                                              **18-556-BAJ-EWD**

**JAMES PACKNETT, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss ("Motion"), filed by defendants Marcus Jones and Jimmy Smith.[1] The Motion is opposed.[2] It is recommended that the Motion be granted for failure to state a claim. It is also recommended that the claims against James Packnett, a non-movant, be dismissed on the Court's own motion, resolving all claims in the case.

## I.    Background

Allen Vicks ("Plaintiff"), who is confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action under 42 U.S.C. § 1983 against James Packnett ("Packnett"), Marcus Jones ("Jones"), and Jimmy Smith ("Smith") (collectively "Defendants"). Plaintiff alleges that Defendants violated his right to be free from cruel and unusual punishment guaranteed by the Eighth Amendment when they failed to protect him from violence at the hands of another inmate.[3] On October 30, 2017, Plaintiff was "written up" by Packnett for disciplinary infractions.[4] As a result, Packnett escorted Plaintiff to administrative segregation.[5] In administrative segregation, the only bunk available was in a cell with another inmate, Percy Cage ("Cage").[6] Plaintiff alleges that it is against Louisiana Department of Public Safety and

---

[1] R. Doc. 12.
[2] R. Doc. 20.
[3] R. Doc. 1.
[4] R. Doc. 1, p. 4.
[5] R. Doc. 1, p. 4.
[6] R. Doc. 1, p. 5.

Corrections ("DOC") policy to double-cell an extended lockdown offender with working cell block or general population offenders, and that Defendants were aware that Plaintiff was a working cell-block offender, but Cage was an extended lockdown offender.[7] Plaintiff says that he informed Packnett that Plaintiff could not live in a cell with an extended lockdown inmate,[8] and that he also protested to Jones about placement with Cage.[9]

After being placed in the cell with Cage, Cage attacked Plaintiff with an ink pen.[10] Plaintiff sustained stab wounds to his hand and face,[11] which he says were the result of Packnett and Jones acting with deliberate indifference to Plaintiff's safety. Plaintiff also blames Smith, as the warden over the cell block.[12] Plaintiff seeks monetary, declaratory, and injunctive relief.[13]

## II.    Law & Analysis

### A.  Standard of Review

In *Bell Atlantic Corp. v. Twombly*,[14] and *Ashcroft v. Iqbal*,[15] the Supreme Court clarified the standard of pleading that a plaintiff must meet to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[16] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[17] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[7] R. Doc. 1, pp. 5-6.
[8] R. Doc. 1, p. 3.
[9] R. Doc. 4, p. 5.
[10] R. Doc. 1, p. 6.
[11] R. Doc. 1, p. 6.
[12] R. Doc. 1, pp. 6-7. Plaintiff later asserts that Packnett told Plaintiff that Smith authorized the double bunking of inmates in administrative segregation. R. Doc. 15-1, ¶ 15.
[13] R. Doc. 6, pp. 1 & 4-5.
[14] 550 U.S. 544 (2007).
[15] 556 U.S. 662 (2009).
[16] *Twombly,* 550 U.S. at 555.
[17] *Iqbal*, 556 U.S. at 678, *quoting Twombly*, 550 U.S. 544.

reasonable inference that the defendant is liable for the misconduct alleged."[18]  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"[19]  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[20]

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court "must accept as true all of the factual allegations contained in the complaint."[21]  *Pro se* litigants are entitled to liberal construction of their pleadings, and "'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"[22]  Additionally, the federal pleading rules simply require a "short and plain statement of the claim showing that the pleader is entitled to relief."[23]  The task of the court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted.[24]  Nevertheless, the court need not accept "a legal conclusion couched as a factual allegation,"[25] or "naked assertions [of unlawful conduct] devoid of further factual enhancement."[26]

### B. Plaintiff's Federal Claims against Smith in his Supervisory Capacity Fail as a Matter of Law

Plaintiff names Smith as a Defendant because Smith is "the warden over the main prison cell blocks and administrative segregation."[27]  Plaintiff also noted in an Amended Complaint that

---

[18] *Id.*
[19] *Id.* at 679.
[20] *Id.* at 678 (internal quotation marks omitted).
[21] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[22] *Id.* (citation omitted).
[23] Fed. R. Civ. P. 8(a)(2).
[24] *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).
[25] *Papasan v. Allain*, 478 U.S. 265, 286 (1986),
[26] *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).
[27] R. Doc. 1, p. 7.

3

Smith is "responsible for the operation of Angola…and for the welfare of all the inmates…."[28] Supervisory officials may be held liable under § 1983 only if they affirmatively participate in constitutional violations or implement unconstitutional policies that lead to the plaintiff's injury.[29] Allegations that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* are insufficient to state a claim under § 1983.[30] To establish a constitutional violation based on policies, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law.[31] In other words, the supervisor must implement a policy so deficient that the policy itself is the moving force behind a constitutional violation.[32]

Plaintiff does not allege any facts to indicate Smith was personally involved in the incident at issue or that he suffered any harm because of an unconstitutional policy implemented by Smith.[33] Because Plaintiff has failed to allege the personal involvement of Smith or the implementation of an unconstitutional policy, his federal claims against Smith fail as a matter of law and are subject to dismissal.

---

[28] R. Doc. 6, p. 2.
[29] *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).
[30] *See Iqbal*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").
[31] *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).
[32] *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).
[33] Though Plaintiff alleges in proposed Amended Complaints (R. Docs. 15-1, p. 3 and 19-1, p. 6) that Smith implemented a policy that allowed Plaintiff to be bunked with another inmate, even if true, as discussed below, double-bunking does not violate the constitution and there are no facts to indicate that Smith was aware of any *specific* risk to Plaintiff by double-bunking him.

### C. Plaintiff Fails to State a Federal Claim Against Jones or Packnett for Failure to Protect

Under the Eighth Amendment to the United States Constitution, a prisoner has a constitutional right to be sheltered from the threat of harm or violence at the hands of other inmates.[34] Although prison officials generally "have a duty ... to protect prisoners from violence at the hands of other inmates,"[35] "[p]rison officials are not . . . expected to prevent all inmate-on-inmate violence."[36]

"Deliberate indifference" is the standard applied in evaluating a failure to protect claim. This term has been defined as including an element of "subjective recklessness" as used in the criminal law.[37] An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate ... safety" and disregards that risk.[38] A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to avoid it.[39] In other words, for there to be liability in connection with this cause of action, there must exist an intent on the part of security officers to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be protected from such harm.[40] The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference.[41] Mere negligence or "failure to alleviate a significant risk that [the official] should have perceived

---

[34] *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986).
[35] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).
[36] *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir 2003).
[37] *Farmer*, 511 U.S. at 837.
[38] *Id.*
[39] *Id.* at 847.
[40] *Johnston*, 786 F.2d at 1259.
[41] *Farmer*, 511 U.S. at 837.

5

but did not" are insufficient to establish a failure to protect claim.[42] Deliberate indifference requires a level of awareness of a specific risk based upon specific information, such that general knowledge of general dangerousness or the like is not enough to support a failure to protect claim.[43]

Plaintiff alleges that Jones and Packnett were aware he should not be housed with Cage due to Cage's status of extended lockdown. Plaintiff has not alleged that any official was aware of facts to indicate that Cage posed a specific risk to Plaintiff; for example, Plaintiff does not allege that Cage and Plaintiff were in a prior altercation or that Cage was on Plaintiff's enemy list. Plaintiff also appears to suggest that he should not have been placed in a cell with Cage because Cage was a mental health patient. However, general knowledge that a mental health patient could be dangerous does not rise to the level of knowledge necessary to state an Eighth Amendment claim. Nor does the double-celling of Plaintiff with a mental health patient state a constitutional claim.[44] As an initial matter, there is no constitutional right to a single cell.[45] This Court has previously dismissed a suit based on the argument that double bunking in administrative segregation is unconstitutional.[46] Likewise the allegation that housing Plaintiff with Cage was a

---

[42] *Id.* at 837. *See also, Domino v. Texas Dept. of Crim. Jus.*, 239 F.3d 752, 756 (5th Cir. 2001), *citing Farmer*, 511 U.S. at 838.

[43] *Walker v. Davis*, No. 17-166, 2019 WL 2465298, at *8 (E.D. Tex. Jan. 10, 2019). *See also Van Williams v. Samaniego*, No. 05-491, 2007 WL 9701460, at *3 (W.D. Tex. Feb. 22, 2007)(citation omitted) ("General knowledge about another inmate's violent tendencies, without more specific information about the risk, does not rise to the requisite level of awareness necessary for a finding of deliberate indifference.").

[44] *See Rhodes* v. *Chapman*, 452 U.S. 337, 348 ("The double celling made necessary by the unanticipated increase in prison population did not lead to deprivations of essential food, medical care or sanitation."); *Collins v. Ainsworth*, 382 F.3d 529, 539 (5th Cir. 2004) (Overcrowding of persons in custody is not *per se* unconstitutional."); *Ruiz v. Estelle (Ruiz II)*, 666 F.2d 854, 858 (5th Cir. 1982) ("The [l]ack of space alone does not constitute cruel and unusual punishment, save perhaps the most aggravated circumstances."). *See also Norman v. Prince*, No. 10-605, 2011 WL 6369977, at *3-4 (M.D. La. Nov. 3, 2011) (rejecting an inmate's claim that it is unconstitutional to place two or more inmates who are classified to maximum security confinement in a single cell because these inmates "are considered violatile [sic] and/or have a history of mental health conditions.").

[45] *See, e.g.*, *Barber v. Quarterman*, No. 09-238, 2010 WL 1417650, at *9 (E.D. Tex. April 5, 2010) (citing *Parker v. Currie*, No. 08-41023, 2010 WL 10924 (5th Cir. 2010) (inmate desired a single cell but was assigned to general population; no constitutional liberty interest infringed)).

[46] *Barrow v. Vannoy*, No. 18-442, 2019 WL 2130237, at *2 (M.D. La. May 1, 2019), *report adopted by Barrow v. Vannoy*, No. 18-442, 2019 WL 2127314 (M.D. La. May 15, 2019) (collecting cases).

violation of Department of Corrections' policies even if true, does not, of itself, establish a violation of a constitutional right.[47]

Though Packnett is not a movant in the Motion before the Court, it is appropriate to dismiss Plaintiff's claims against Packnett on the Court's own motion.  The Court possesses the inherent authority to *sua sponte* dismiss a party or expand upon the grounds for dismissal urged by movants as long as the adverse parties receive notice and a chance to respond.[48]  This Report and Recommendation provides adequate notice to Plaintiff.[49]  Also, where a defending party establishes that a plaintiff has no cause of action, this defense should inure to similarly situated defendants.[50]  Because Packnett is similarly situated, particularly to Jones, it is appropriate to dismiss Packnett for the same reasons.  Though Plaintiff protested his placement in a cell with Cage, he has not stated any facts to indicate that Packnett was aware of a specific risk posed to Plaintiff by Cage.  Thus, just as Plaintiff has failed to state a cause of action for failure to protect against Jones, he has failed to state a cause of action against Packnett and Plaintiff's federal claims against Packnett and Jones for failure to protect should be dismissed.

---

[47] *Lewis v. Secretary of Public Safety and Corrections*, 870 F.3d 365, 369 (5th Cir. 2017) ("The LaDPSC and CCA internal rules and regulations do not alone create federally-protected rights and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right.") (internal citations omitted)). *See also Humphrey v. Banks*, 777 Fed.Appx. 767, 768 (5th Cir. 2019) (the plaintiff "has not shown that the district court erred by dismissing for failure to state a claim his claim that prison officials violated an internal policy by assigning him to a unit that housed gang-affiliated inmates.  Violations of prison rules or regulations, without more, do not give rise to a cause of action.").
[48] *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 66 F.3d 322 (5th Cir. 1995) (unpubl.) (district court *sua sponte* dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer).
[49] *McCoy v. Wade*, No. 06-2292, 2007 WL 1098738, at *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties).
[50] *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (citations omitted).

7

### D. Plaintiff's Motions for Leave to File Amended Complaints Should be Denied as Futile

The two proposed amended complaints[51] most recently filed by Plaintiff are identical and thus, are addressed together. The facts stated in Plaintiff's proposed amended complaints are largely the same as those already in the record. Plaintiff states in one of his motions for leave that the proposed amendment is meant to rectify any defects in the complaint by clarifying the events that took place surrounding the incident.[52] One fact Plaintiff adds in this proposed amended complaint is that Cage "appeared to be dangerous."[53] This fact is of no consequence. Prisons are filled with dangerous individuals and are necessarily dangerous places; thus, an inmate's perception that another inmate "looks" dangerous is insufficient to demonstrate that an official had the requisite level of awareness of a specific risk to establish deliberate indifference.[54]

Plaintiff also adds that, after the incident, Packnett told Jones that "he knew they should not have placed plaintiff inside the cell with Cage."[55] However, an "[a]n official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight."[56] Thus, Packnett's opinion after the incident does not affect the analysis of Plaintiff's claims. Plaintiff also states in his proposed amended complaint that Smith implemented "a concocted authorization to defendants Packnett and Jones to double bunk Plaintiff."[57] An amendment to

---

[51] R. Docs. 15-1 & 19-1.
[52] R. Doc. 15.
[53] R. Doc. 15-1, p. 3.
[54] *See Farmer*, 511 U.S. at 858-59 (Thomas, J., concurring) (recognizing that "[p]risons are necessarily-dangerous places," which "house society's most antisocial and violent people in close proximity with one another," thereby making it inevitable that "some level of brutality among prisoners" may occur). *See also Verrette v. Major*, No. 07-547, 2011 WL 3269319, at *2 (W.D. La. July 29, 2011) (dismissing an inmate's failure-to-protect claim upon a finding that, even if prison officials were aware of an inmate's history of violence, "[p]risons are dangerous places housing dangerous people," and "[i]t is unreasonable to believe persons overseeing the classification of inmates for work assignments and housing can prevent all potential prisoner-on-prisoner violence").
[55] R. Doc. 19-1, p. 5.
[56] *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010), *citing Graham v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865 (1989).
[57] R. Doc. 19-1, p. 6.

8

allege this fact would be futile since a policy allowing double bunking is not per se unconstitutional. As the additional facts Plaintiff seeks to add through is proposed amended complaints would not change the result that he has failed to state federal constitutional claims, amendment would be futile and Plaintiff's Motions for Leave to File Amended Complaints[58] should be denied.

### E. This Court Should Decline to Exercise Supplemental Jurisdiction over Plaintiff's Potential State Law Claims

To the extent Plaintiff asserts state law claims, this Court should decline to exercise supplemental jurisdiction over such claims. A district court is authorized to decline supplemental jurisdiction over such claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.[59] Since Plaintiff has failed to state a valid federal claim, it is appropriate for the Court to decline to exercise supplemental jurisdiction over any potential state law claims.

### RECOMMENDATION

**IT IS RECOMMENDED** that the Plaintiff's Motions for Leave to File Amended Complaints[60] be **DENIED** as futile.

**IT IS FURTHER RECOMMENDED** that the Motion to Dismiss,[61] filed by Jimmy Smith and Marcus Jones be **GRANTED** and that Plaintiff's federal claims against Jimmy Smith and Marcus Jones be **DISMISSED WITH PREJUDICE**.

---

[58] R. Docs. 15 & 19.
[59] 28 U.S.C. § 1367.
[60] R. Docs. 15 & 19.
[61] R. Doc. 12.

**IT IS FURTHER RECOMMENDED** that Plaintiff's federal claims against James Packnett be **DISMISSED WITH PREJUDICE** on the Court's own motion pursuant to 28 U.S.C. § 1915(e).

If the prior recommendations are adopted and the federal claims are dismissed, **IT IS FURTHER RECOMMENDED** that this Court decline to exercise supplemental jurisdiction over any of Plaintiff's potential state law claims and that the case be **CLOSED** and any remaining motions **TERMINATED**, as all claims would be addressed.

Signed in Baton Rouge, Louisiana, on July 6, 2020

                                              **ERIN WILDER-DOOMES**
                                              **UNITED STATES MAGISTRATE JUDGE**